**UNITED STATES of America, Plaintiff,**

**v.**

**Eric Alan HILL, Defendant.**

**Cr. No. C3–87–35.**

United States District Court,
D. North Dakota,
Southeastern Division.

July 1, 1987.

Gary Annear, First Asst. U.S. Atty., Fargo, N.D., for plaintiff.

James Sandsmark, Fargo, N.D., for defendant.

## MEMORANDUM AND ORDER

BENSON, Senior District Judge.

Eric Alan Hill has been charged in a two count indictment with violating 18 U.S.C. § 922(g)(1) and 924(a)(1)(B). Hill filed a motion to suppress a handgun and rifle, which form the basis for the charges. He also moved to suppress statements made by his girlfriend to police officers and statements made by himself while incarcerated at the Cass County Jail. The court held a hearing on the suppression motion, following which the court orally denied the motion and advised counsel that a written opinion would be filed. This opinion is filed *nunc pro tunc* as of June 29, 1987. The motion to suppress was denied, for the reasons hereinafter set out.

### Facts

On April 14, 1987, Peter F. Graber, Jr., a Fargo Police Department narcotics detective, and Paul Bazzano, an agent of the North Dakota Drug Enforcement Unit, began surveillance of a car owned by the defendant. The surveillance began after the officers acquired information leading them to believe the defendant was involved in trafficking controlled substances. After observing the car parked on a Fargo street, the officers determined through an inquiry to the Motor Vehicle Department that

Hill's operator's license had been suspended.

The narcotics officers passed this information to Fargo Police Officer Linda Tusow, who was on duty in a marked squad car. The narcotics agents informed Tusow Hill's license was suspended and told her that if he moved the car they wanted him stopped for that violation. Subsequently, Hill left a residence near the place his car was parked, entered the car, and drove away. Officer Tusow pursued Hill, stopped him a short distance from where his car had been parked, and placed him under arrest for driving under suspension.

Officer Tusow was joined at the location of Hill's stop by Officers Graber and Bazzano. Other officers also arrived. Officer Graber conducted a pat down search of Hill and discovered an empty gun holster on the back of Hill's belt and found two plastic bags and a film canister on Hill's person. The plastic bags and film canister contained controlled substances. Hill was placed in Tusow's vehicle.

Graber and Bazzano peered through the left front window of Hill's car, and saw the butt of a gun protruding from under the front seat. Graber opened the car door and removed the gun, a 32 caliber automatic handgun, from the car. The weapon was in a cocked condition with a shell in the chamber, and three shells in the clip.

Subsequently, Hill was transported to the Cass County Jail, and at the booking procedure was given the *Miranda* warning. Hill was not questioned by the officers at that time. At the suppression hearing, Graber indicated that Hill did not ask for an attorney.[1]

Following the booking, Hill's house was searched pursuant to a warrant obtained from a state judicial officer, and a rifle and other items were seized from the house. A check with National Crime Information Center revealed that the handgun seized from Hill's car had been stolen. At the suppression hearing, neither the warrant nor the supporting affidavit were before the court.

---

1. At trial, Graber, under cross examination, and after he was shown his report to refresh his recollection, admitted that Hill had invoked his right to an attorney.

The day following the arrest, Graber was told by an unidentified jail employee that Hill wished to talk to an officer. Hill was brought to an interview room, where Graber met him and again gave him the *Miranda* warning. According to Graber, Hill said that he would not talk about the seized drugs, but did want to talk about the guns. Hill then told Graber that he had bought the gun for his own protection and that the individual from whom he bought it had assured him that it wasn't stolen, and that he obtained the rifle on a business deal. Graber told Hill that he would pass the information about the guns to an Alcohol, Tobacco and Firearms agent. Two days later, John Keating, a special agent with the A.T. & F., and Agent Bazzano called on Hill at the county jail, advised him of his *Miranda* rights and talked to him. Hill told Keating substantially the same thing he had previously told Graber.

## Discussion

### I. SUPPRESSION OF THE HANDGUN

Hill moved for the suppression of the handgun on the theory that it was seized following a pretextual arrest. This argument is based on the fact that Hill was under surveillance by officers investigating Hill's activity in drug trafficking. Although not introduced at the suppression hearing, Hill has filed a copy of Bazzano's investigative report which states that "ERIC HILL was indeed the source of supply for KOLLAR [an arrested drug offender] and that ERIC HILL would probably be carrying some type of controlled substance if he was found driving his vehicle." (emphasis original). At the suppression hearing, both Graber and Bazzano testified that Tusow was told they wanted Hill stopped on the driving under suspension violation. Both also testified that they used the stop as an investigative tool. Furthermore, Bazzano also testified that he believed Hill would probably have drugs on him.

In *United States v. Lefkowitz*, 285 U.S. 452, 467, 52 S.Ct. 420, 424, 76 L.Ed. 877 (1932), the court stated that an "arrest may not be used as a pretext to search for evidence." Similarly, "[a]n arrest ostensibly for one purpose but in reality for the primary purpose of furthering an ulterior goal is unreasonable under the fourth and fourteenth amendments." *Warren v. City of Lincoln*, 816 F.2d 1254, 1257 (8th Cir. 1987). In *United States v. Jones*, 452 F.2d 884, 888 (8th Cir.1971), the Eighth Circuit stated generally that a search will not be sustained "if the arrest for a traffic violation is a mere pretext for an exploratory search." In determining whether a pretextual arrest occurred, the court considers "the motivation or primary purpose of the arresting officers." *United States v. Smith*, 802 F.2d 1119, 1124 (9th Cir.1986). The Eighth Circuit in *United States v. Lester*, 647 F.2d 869, 873 (8th Cir.1981), without specifically stating what evidence it considered to determine whether an arrest was pretextual, stated that "[t]hese circumstances do not give rise to the inference that the arrest was effected for the purpose of creating an excuse to search." *See also United States v. Millio*, 588 F.Supp. 45, 49 (W.D.N.Y.1984) (citing *Lester*).

In this case, the court assumes that Officers Graber and Bazzano, as a pretext to search for controlled substances, wanted Hill stopped by Officer Tusow for driving under suspension.[2]

It appears the instant case fits the rationale of *United States v. Hollman*, 541 F.2d 196 (8th Cir.1976), and the handgun is not subject to suppression. In *Hollman*, the defendant, a passenger in an automobile, was convicted of unlawfully carrying a firearm during the commission of a felony in violation of 18 U.S.C. § 924(e). The arresting officers while on a narcotics assignment were following a suspected narcotics peddler. They observed him "weaving" on the highway, and they radioed for the assistance of a marked police vehicle, apparently intending to stop him. When the

---

**2.** There was no evidence that the officers had probable cause to stop Hill for a narcotics violation, thereby bringing this case within *United States v. Smith*, 635 F.2d 1329 (8th Cir.1980).

Driving under suspension is a Class B Misdemeanor, punishable by a $500 fine and 30 days in jail. N.D.Cent.Code §§ 39–06–42, 12.1–32–01 (Supp.1985 & Replacement 1985).

vehicle they were following made a right turn, they noticed that its headlights were on but there were no taillights. They then signalled him to stop, which he did. As they walked to the car, a box containing heroin packets was thrown from the passenger side of the car.

The district court denied defendant's motion to suppress. On appeal, the court of appeals held that the stop could only be regarded as a pretext to search the car, but that the detectives had probable cause to stop the vehicle. However, they lacked justification to conduct an exploratory search as an incident to the stop or any arrest based upon such probable cause. The probable cause to arrest the passenger arose out of the recovery of narcotics outside the car together with their knowledge of the driver's reputation and the passengers suspected activities. The subsequent search of the passenger's person produced the gun and was incident to a lawful arrest.

■ Similarly, in the present case, Officer Tusow had probable cause to stop defendant's vehicle, having been told by the other two officers that they had determined defendant was driving under suspension.[3] The pretextual arrest supports the suppression of the controlled substances discovered as a result of the "pat-down," but the plain view observation of the loaded handgun under the front seat did not involve a fourth amendment search. *Texas v. Brown*, 460 U.S. 730, 738, 103 S.Ct. 1535, 1541, 75 L.Ed.2d 502 (1983). Following the plain view observation of the handgun, the officers were entitled to seize the handgun under the "automobile exception" to the warrant requirement. *See Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Consequently, the seizure of the handgun was not the product of a search arising out of the pretextual stop. The handgun is not subject to suppression.

## II. SUPPRESSION OF THE RIFLE AND GIRLFRIEND'S STATEMENT

Hill also moved for the suppression of the rifle seized from Hill's house and of the statement made by Hill's girlfriend indicating that Hill owned the rifle. The warrant and affidavit used to obtain the warrant were not before the court. The parties agree, however, that the officers searched the house pursuant to a warrant issued by a state judicial officer.

■ In challenging a search conducted pursuant to a warrant, the defendant bears the burden of proving the search was illegal. *See, e.g., United States v. Longmire*, 761 F.2d 411, 417 (7th Cir.1985); *United States v. Taborda*, 635 F.2d 131, 140 & n. 13 (2d Cir.1980). Here, Hill claims the warrant was based on evidence seized following a pretextual arrest. Because no evidence has been presented indicating that the warrant and supporting affidavit were invalid, the court finds that the defendant has not carried his burden of proof in challenging the search of his house. The rifle and girlfriend's statement are not subject to suppression.

## III. SUPPRESSION OF HILL'S STATEMENT

Hill also moved for the suppression of statements made by him while in custody. Hill specifically alleges that officers violated his right not to be questioned in the absence of counsel.

■ Custodial interrogation must be preceded by advice of the right to remain silent and right to the presence of an attorney. *Edwards v. Arizona*, 451 U.S. 477, 481–82, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981). If after receiving the warnings the accused wishes not to speak, the interrogation must cease. *Id.* at 482, 101 S.Ct. at 1883. If the accused requests counsel, interrogation must cease until an attorney is present. *Id.* If an accused wishes to talk with the police through counsel, further interrogation may not occur until counsel has been made available, unless the accused initiates further communication, exchanges, or conversations with police.

---

**3.** Defendant entered a plea of guilty in municipal court to the charge of driving under suspension.

**178**

*Id.* at 484–85, 101 S.Ct. at 1884–85. The accused may, however, waive his rights to counsel and silence if, based on the totality of the circumstances, the facts show the accused initiated contact with the police and knowingly and intelligently waived those rights. *Id.* at 486 n. 9, 101 S.Ct. at 1885 n. 9.

In *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 492–93, 83 L.Ed.2d 488 (1984), the court noted that *Edwards* established a rigid prophylactic rule requiring two distinct inquiries. First, the court must determine whether the accused actually invoked his right to counsel. Second, "if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." *Smith,* 105 S.Ct. at 493.

 On the basis of the testimony of officer Graber and defendant Hill at the suppression hearing, the court finds that Hill was given the *Miranda* warning at the scene following his arrest, and again during the booking procedure. At some point in the booking procedure he invoked his right to counsel. The issues before the court, therefore, are: a) whether Hill initiated subsequent contact with officers, and b) whether Hill knowingly and intelligently waived his right to counsel. The government bears the burden of proving Hill's waiver of his right to counsel. *McCree v. Housewright,* 689 F.2d 797, 802 (8th Cir. 1982), *cert. denied,* 460 U.S. 1088, 103 S.Ct. 1782, 76 L.Ed.2d 352 (1983). It must make this showing by a preponderance of the evidence. *Colorado v. Connelly,* — U.S. —, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986).

The court finds that the government has carried its burden and that the conversations that defendant Hill had on April 15 with officer Graber and on April 17, 1987, with Agent Bazzano and A.T. & F. agent Keating were initiated by Hill because of his desire to discuss the weapons issue. He did not reinvoke his right to counsel. The court further finds that Hill knowingly

and intelligently waived his right to counsel and his statements to those three agents were voluntary. Hill's testimony at the suppression hearing when considered in its entirety lacked credibility.

IT IS ORDERED for the purpose of the trial of the defendant on the indictment charging violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(1)(B), the evidence of defendant's illegal possession of controlled substances is suppressed.

IT IS FURTHER ORDERED the motions to suppress the handgun, the rifle, the girlfriend's statement, and defendant's statements to Agents Graber, Bazzano and Keating are denied.