Steffen, C. J.,
concurring in result only:
I concur in the affirmation of Taylor’s judgment of conviction, but strongly disagree with the test adopted by the majority in *1260 addressing the propriety of pretextual stops under the Fourth Amendment. I therefore write separately.
The issue of the legal eifect of a technically lawful stop or arrest that has been made as a pretext to search a vehicle for contraband or other evidence of a more serious crime has not been squarely addressed in Nevada. This court has merely alluded to the possible effects of pretextual law enforcement. See Hatley v. State, 100 Nev. 214, 678 P.2d 1160 (1984).
In Hatley, this court considered the district court’s denial of Hatley’s petition for post-conviction relief sought on grounds that he had been arrested in his home without a warrant. The State had opposed the motion by submitting a sworn affidavit that Hatley was arrested pursuant to an outstanding misdemeanor bench warrant. This court concluded that the State’s post-trial allegation of fact necessitated an evidentiary hearing and remanded the case to the district court. Id. at 216, 678 P.2d at 1161. The opinion in Hatley included the following comment:
Additionally, we note that an evidentiary hearing was necessary to determine the truth of appellant’s alternate contention that even if the arresting officers were aware of the existence of the misdemeanor bench warrant at the time of appellant’s arrest, they were nevertheless using it as an impermissible “pretext” to arrest appellant on the burglary charge. This contention, if true, would at least arguably entitle appellant to relief. See Taglavore v. United States, 291 F.2d 262, 265 (9th Cir. 1961) (where police officers use misdemeanor warrant as a pretext to arrest a defendant for a felony narcotics offense and to search the defendant for narcotics, both the arrest and the ensuing search are illegal).
Id. at 217, 668 P.2d at 1162 (emphasis added). This court is now directly confronted with the “pretext” issue alluded to in Hatley.
Although, as noted by the majority, the U.S. Supreme Court has never directly ruled on the issue of pretext as raised in the present context,[1] the Court has articulated a clear standard for evaluating the actions of law enforcement officers challenged as violations of the Fourth Amendment:
[Ajlmost without exception in evaluating alleged violations of the Fourth Amendment the Court has first undertaken an *1261 objective assessment of an officer’s actions in light of the facts and circumstances then known to him. The language of the Amendment itself proscribes only “unreasonable” searches and seizures.
. . . [T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer’s action does not invalidate the action taken as long as the circumstances, viewed objectively, justify the action.
Scott v. United States, 436 U.S. 128, 137-38 (1978); see also United States v. Robinson, 414 U.S. 218, 236 (1973) (legal justification for search incident to arrest is to be evaluated objectively irrespective of arresting officer’s subjective fears); Terry v. Ohio, 392 U.S. 1, 21-22 (1968) (in assessing whether search is reasonable, facts must be judged against an objective standard).[2] Courts have sought to implement Supreme Court concerns by adopting two discrete “objective” standards for evaluating the validity of pretextual stops; the two standards may produce substantially different consequences. A major/minor split in the federal circuit courts characterizes the two diverging lines of jurisprudence.
The function of the objective inquiry under the first standard is to determine whether the stopping or arresting officer’s actions were legally authorized. See, e.g., United States v. Cummins, 920 F.2d 498 (8th Cir. 1990), cert. denied, 502 U.S. 962 (1991). The Cummins court held that ‘“so long as the police are doing no more than they are legally permitted and objectively authorized to do, [the resulting stop or] arrest is constitutional.’” 920 F.2d at 501 (quoting United States v. Trigg, 878 F.2d 1037, 1041 (7th Cir. 1989)).[3] A decided majority of the circuit courts have adopted this so-called “could” test, which, unfortunately, the majority has rejected for the state of Nevada.
In contrast, the objective inquiry under the second standard is whether a reasonable officer would have acted similarly under the *1262 circumstances. See, e.g., United States v. Guzman, 864 F.2d 1512 (10th Cir. 1988). In Guzman, police officers in New Mexico stopped defendant Guzman for failing to wear a seat belt. Subsequently, events transpired that led to the seizure of incriminating evidence in Guzman’s vehicle. On the issue of pretext, the Tenth Circuit Court of Appeals stated:
If police officers in New Mexico are required to and/or do routinely stop most cars they see in which the driver is not wearing his seat belt, then this stop was not unconstitutionally pretextual at its inception, even if [the officer] subjectively hoped to discover contraband during the stop. Conversely, if officers rarely stop seat belt law violators absent some other reason to stop the car, the objective facts involved in this stop suggest that the stop would not have been made but for a suspicion that could not constitutionally justify the stop.
Guzman, 864 F.2d at 1518 (citations and footnote omitted).[4] The majority has adopted this “would” test for Nevada.
In deciding Taylor’s suppression motion, the district court correctly concluded that Nevada has never formally adopted either standard. Taylor contests this conclusion, insisting that Hatley embraces the “would” standard and that the circumstances leading up to the seizure of evidence from his vehicle warrant suppression of both the physical evidence and his admissions as fruits of a pretextual stop. The State correctly notes, however, that the Hatley comment on pretext, citing the Ninth Circuit “would” standard, is inconclusive dictum. Moreover, in urging that the district court did not err under either of the above standards, the State noted that the district court actually adhered to the “would” standard and nevertheless found no evidence to suggest that the stop and ensuing events were pretextual.
I suggest that the “would” standard is fraught with uncertainty and accords criminal suspects greater protection than is mandated by the Fourth Amendment and our Nevada Constitution. Conversely, the “could” standard is a purely objective standard for pretextual analysis that both protects criminal suspects from unbridled law enforcement discretion and facilitates judicial review of alleged law enforcement abuses.
As noted above, the key to Fourth Amendment jurisprudence is objective reasonableness. This standard has been employed over the years to carve out various exceptions to the general rule that *1263 law enforcement officers must first obtain a warrant before conducting a search and seizing incriminating evidence. For example, under certain circumstances, law enforcement officers may perform an inventory search of a suspect’s vehicle following an arrest. See Florida v. Wells, 495 U.S. 1 (1990). The search, however, must be reasonable, guided by standard criteria, and for the objective purpose of safeguarding the suspect’s belongings and protecting against claims of misappropriation. Id. at 4-5. Likewise, warrantless searches may be performed incident to an arrest or pursuant to a host of other exceptions to the general warrant rule. Regardless of the theory underlying a warrantless search, however, the search and seizure in all cases must be objectively reasonable, based on the particular facts and circumstances.
There are solid reasons why a substantial majority of the federal circuit courts and a substantial number of state courts have adopted the “could” standard for evaluating pretextual stops and their consequences. The following cases represent compelling examples:
(1) The Sixth Circuit has substantially embraced the “could” test, although electing not to explicitly adopt it because of the possibility that it may allow room for “an after-the-stop determination that the officer theoretically could have stopped the car for a traffic violation, although he did not notice at the time of the stop that a violation had occurred.” United States v. Ferguson, 8 F.3d 385, 391 (6th Cir. 1993), cert. denied, 115 S. Ct. 97 (1994). With that caveat, however, the court proceeds to essentially adopt the “could” test, ruling that
[t]he stop is reasonable if there was probable cause, and it is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop. It is also irrelevant whether the stop in question is sufficiently ordinary or routine according to the general practice of the police department or the particular officer making the stop.

Id.

(2) In United States v. Scopo, 19 F.3d 777 (2d Cir.), cert. denied, 115 S. Ct. 207 (1994), the Second Circuit also adopted the minor variation of the “could” test embraced by the Sixth Circuit in Ferguson. Citing to the above-quoted language of Ferguson, the Scopo court held that “where the arresting officer had probable cause to believe that a traffic violation occurred or was occurring in the officer’s presence, and was authorized by state or municipal law to effect a custodial arrest for the particular offense, the resulting arrest will not violate the fourth amendment.” Id. at 784. In emphasizing the “authorization test” justi- *1264 tying a stop rather than the extent to which usual police practice, in similar situations, would result in stopping a vehicle, the Second Circuit test is virtually indistinguishable from the “could” test.
(3) In United States v. Hawkins, 811 F.2d 210, 215 (3d Cir.), cert. denied, 484 U.S. 833 (1987), the Third Circuit adopted the “could” test, ruling that “the fact that a pretext was given does not render invalid an otherwise constitutional search.”
(4) The Fourth Circuit, in United States v. Hassan El, 5 F.3d 726, 730 (4th Cir. 1993), cert. denied, 114 S. Ct. 1374 (1994), adopted an “objective” test that is identical to the “could” test. Thus, the court ruled that
[u]nder the objective test, if an officer has probable cause or a reasonable suspicion to stop a vehicle, there is no intrusion upon the Fourth Amendment. That is so regardless of the fact that the officer would not have made the stop but for some hunch or inarticulable suspicion of other criminal activity [.]
(5) In adopting the “could” test, the Fifth Circuit delved into the English history supporting the rule. The court viewed as analogous a purported statement by Elizabeth I (daughter of Henry VIII and Anne Boleyn, born 1533, Queen of England from 1558 to 1603), in which the Queen is “said to have remarked that she would make no windows into the minds of men who served her loyally.” United States v. Causey, 834 F.2d 1179, 1184 (5th Cir. 1987) (en banc). A mere 384 years after the demise of the revered sovereign, the Causey court held that “so long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry.” Id.
(6) Borrowing some language from the Fifth Circuit, the Seventh Circuit adopted the “could” test, holding that “so long as the police are doing no more than they are legally permitted and objectively authorized to do, an arrest is constitutional.” United States v. Trigg, 878 F.2d 1037, 1041 (7th Cir. 1989), cert. denied, 502 U.S. 962 (1991).
(7) The Eighth Circuit, noting that only the Tenth and Eleventh Circuits (later joined by the Ninth Circuit) had adopted the “would” test, held that “we expressly decline to join them,” and thereafter elected to adopt the “could” test as announced in Trigg. United States v. Cummins, 920 F.2d 498, 501 (8th Cir. 1990), cert. denied, 502 U.S. 962 (1991).
(8) The D.C. Circuit has also adopted the “could” test, ruling that “the Fourth Amendment does not bar the police from stopping and questioning motorists when they witness or suspect a *1265 violation of traffic laws, even if the offense is a minor one.” United States v. Mitchell, 951 F.2d 1291, 1295 (D.C. Cir. 1991), cert. denied, 504 U.S. 924 (1992).
The following cases are also representative of the state courts that have adopted the “could” test:
(1) In State v. Swanson, 838 P.2d 1340, 1343 (Ariz. Ct. App. 1992) (citations omitted), the court held that “[r]egardless of the officer’s underlying motives, a stop is not invalid if there exists a valid, objective reason to make the stop. We have held that a violation of the traffic laws provides a sufficient objective ground to stop a vehicle.”
(2) Joining the host of courts adopting the “could” test, the Utah Supreme Court in State v. Lopez, 873 P.2d 1127, 1135 (Utah 1994), held that “[a]n officer who observes a traffic violation has probable cause to stop the driver. This is so despite the officer’s motivations or suspicions that are unrelated to the traffic offense.” Specifically rejecting the “would” test, which it referred to as the “pretext stop doctrine,” the Lopez court observed that “[wjhile objective on its face, the pretext doctrine is ultimately a subjective standard. To apply this standard, courts must explore the detaining officer’s state of mind and divine his or her true motives for making the stop.” Id. at 1136.
(3) An Oregon court adopted the “could” test, ruling that “if an officer is where he has a right to be and sees a driver commit a traffic infraction, the officer may stop the driver . . . regardless of any other motive that he may have.” State v. Mesa, 822 P.2d 143, 145 (Or. Ct. App. 1991) (citing State v. Olaiz, 786 P.2d 734, 736 (Or. Ct. App. 1990)).
(4) Joining the ranks of jurisdictions adopting the “could” test, the Court of Criminal Appeals in Garcia v. State, 827 S.W.2d 937 (Tex. Crim. App. 1992) (en banc), described the split among the federal circuit courts as one between an “entirely objective evaluation” (the “could” test), and a “modified objective test” (the “would” test). Id. at 942. The Garcia court stated that the “modified objective approach seems at worst unworkable and at best highly problematic, [and] we reject it in favor of the prevailing, entirely objective approach adopted by a majority of the federal circuit courts.” Id. (footnote omitted).
(5) Adopting the “could” test, the court in People v. Flores, 596 N.E.2d 1204, 1211 (Ill. App. Ct. 1992), held that “an otherwise lawful search cannot be rendered unlawful because of the motives of the police conducting it.”
(6) Several courts of appeal in our populous state to the west have also adopted the “could” test. In People v. Miranda, 21 Cal. Rptr. 2d 785, 791 (Ct. App. 1993), the court ruled that “if, in the course of a traffic stop, the police do no more than they are *1266 legally authorized to do, a defendant’s claim that the stop was nevertheless a pretext to conduct an otherwise unjustifiable search must fail.” The Miranda court also noted that “although the ‘reasonable officer’ test purports to be objective, the analysis is not so different from a purely subjective approach to the question of whether police conduct was unreasonable under the fourth amendment.” Id. at 792.
Most recently, the court in People v. King, 36 Cal. Rptr. 2d 365, 368 (Ct. App. 1994), cert. granted, 39 Cal. Rptr. 2d 823 (1995), held that “the subjective motivation of an arresting officer is irrelevant in determining the propriety of a traffic stop.” In agreeing with the Miranda court, the King court noted that “the majority objective test, which focuses solely on whether the detention was legally authorized, is better suited to analysis of assertedly pretextual traffic stops than the minority approach, which inquires whether the stop would normally have been made absent an additional investigatory motive.” Id. at 369.
I suggest that the minority “would” rule embraced by the majority in the instant case inappropriately obscures analytically distinct actions implicating the Fourth Amendment. For example, the Guzman court noted:
[I]n the absence of standardized police procedures that limit discretion, whether we are simply allowed to continue on our way with a stern look, or instead are stopped and subjected to lengthy and intrusive interrogation when we forget to wear our seat belts, turns on no more than “the state of the digestion of any officer who stops us or, more likely, upon our obsequiousness, the price of our automobiles, the formality of our dress, the shortness of our hair or the color of our skin.”
Guzman, 864 F.2d at 1516 (citation omitted and emphasis added). However, absent some lawful justification that transcends the cause for the initial stop, we would surely rule unconstitutional a “lengthy and intrusive interrogation” following a stop predicated on a person’s failure to wear his seat belt — even under the auspices of the “could” standard. See United States v. Sharpe, 470 U.S. 675 (1985).[5] The stop would therefore consti *1267 tute a pretext only to the extent that probable cause, or at least an articulable and reasonable suspicion, for the ensuing undue detention and interrogation is lacking. The initial stop, however, would be objectively reasonable when effectuated pursuant to state law. Moreover, although the constitutionality of warrantless searches and seizures subsequent to an arrest must be analyzed as the Supreme Court and this court have had past occasion to do, the preceding arrest requires separate analysis, with particular emphasis on the constitutionality of the law under which the arrest is made.
Injecting into the mix the further requirement that a “reasonable” officer would enforce the provision authorizing the police action in question misses the mark. Such a requirement presupposes that the executive branch of state government, through its exercise of law enforcement discretion, may routinely and selectively “nullify” the clear legislative intent of a constitutional state statute. Providing official sanction to such a proposition would be unwarranted and counterproductive.[6] Moreover, despite the lip service given by “would” jurisdictions to the standard of objective reasonableness mandated by the Fourth Amendment, the clear implication of the “would” standard is that any officer acting outside of customary parameters, albeit according to stat *1268 ute, is in fact acting pursuant to a subjective, ulterior motive.[7] This type of judicial cynicism tends to negate the specialized training, and the “sixth sense” that officers acquire in the course of their work. Indeed, every time officers whose training and experience alert them to suspicions of more serious criminal activity are prevented from following their instincts in stopping a driver for a routine traffic violation, and the driver is of the type that spawn these types of contested cases, the lack of police intervention would result in the commission of another serious criminal oifense that could have been prevented. I fail to see social benefit in such a policy.
Moreover, a pretextual analysis pursuant to the “would” standard implicates a retrospective approach that raises further concerns. Certainly, the validity of a stop or arrest for the violation of a rarely enforced statute would remain unquestioned if the sole outcome were a penalty for the statutory infraction itself. Pretext would become an issue only upon the occurrence of further events leading to the warrantless seizure of incriminating evidence. I cannot subscribe to the notion that the identical, legally authorized police action is constitutional in the former instance and unconstitutionally pretextual in the latter.[8]
Therefore, where a facially constitutional statute is violated, responsive police action based thereon may be invalid only if applied in an unconstitutional manner. For example, if troopers in Nevada were to stop only members of a particular racial minority to enforce a certain traffic law, an objectively identifiable and invalidating impropriety would exist. However, absent some clearly identifiable and relevant factor rendering a statute unconstitutional as applied, I suggest that it would be unsound to conclude that an officer deviating from the norm of local law enforcement is acting unreasonably under Fourth Amendment *1269 standards. This would be true even in the extreme case where a particular, constitutional statute is enforced primarily against those suspected of hauling contraband, because it makes little sense to consider the subjective motivations of stopping or arresting officers in determining whether their actions are constitutional.[9]
I suggest, therefore, that the central inquiry in the instant case should be whether the bases for the stop, computer check, and subsequent arrest are objectively reasonable under Fourth Amendment standards. In analyzing what occurred here, it must first be noted that NRS 484.541, NRS 484.555 and NRS 484.695 authorize officers in Nevada to stop vehicles having nonfunctional brake lights in order to issue repair orders. Second, although an officer stopping a vehicle under such circumstances may not detain a person longer than necessary, Taylor’s failure to produce a valid driver’s license upon Trooper Hensley’s request justified the ensuing computer check on the status of Taylor’s driver’s license. Third, NRS 171.124(l)(a) authorizes the arrest of persons committing a public offense in the presence of the arresting law enforcement officer — in this case, driving without a valid driver’s license. Therefore, without regard to the irrelevant, subjective intent of the stopping and arresting officers, enforcement of the foregoing provisions in the manner indicated does not constitute a Fourth Amendment violation.[10]
An entirely separate issue is whether the trooper’s search of Taylor’s vehicle following his arrest was reasonable, and the Fourth Amendment again provides the touchstone for answering the question. However, I agree with the majority that the events subsequent to Taylor’s lawful arrest were routine, including the search of his vehicle during which incriminating evidence was seized. By all indications, the troopers’ inventory search during which incriminating evidence was discovered conformed to legal and departmental guidelines.
*1270 For the foregoing reasons, I strongly oppose the majority’s adoption of the “would” test for Nevada. In all other respects I concur in the majority opinion.

 The Court has held that “[a]n arrest may not be used as a pretext to search for evidence.” United States v. Lefkowitz, 285 U.S. 452, 467 (1932). In that case, however, the Court was disturbed by the nature of the search and seizure of evidence following the arrest and not by the arrest itself, which was performed pursuant to a lawful warrant. Ruling on the constitutionality of a stop or arrest in the first instance is analytically distinct from ruling on the constitutionality of a subsequent search and seizure.

 In Maryland v. Macon, 472 U.S. 463 (1985), the Court stated that “[w]hether a Fourth Amendment violation has occurred ‘turns on an objective assessment of the officer’s actions in light of the facts and circumstances confronting him at the time,’ and not on the officer’s actual state of mind at the time the challenged action was taken.” Id. at 470-71 (quoting Scott v. United States, 436 U.S. 128, 136 (1978)).

 This standard is hereinafter referred to as the “could” standard, which is defined by the question whether, pursuant to a facially constitutional rule of law authorizing a stop or arrest, the officer “could” legally make the stop or arrest.

 This standard is hereinafter referred to as the “would” standard, which is defined by the question whether, in the presence of a facially constitutional rule of law authorizing a stop or arrest, a reasonable officer “would” have made the stop or arrest under similar circumstances.

While the Supreme Court in Terry v. Ohio, 392 U.S. 1 (1968), acknowledged the objective reasonableness of investigatory stops based on no more than an articulable and reasonable suspicion of the commission of a crime, the Court in Sharpe, while refusing to create a per se time limit for a Terry stop, considered it appropriate, in assessing whether a detention is too long in duration to be justified as an investigative stop, “to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.” Sharpe, 470 U.S. at 686. Therefore, if the cause of a *1267 police stop is a person’s failure to wear a seat belt, the stop can be no longer than necessary to issue a citation or warning, absent, at the very least, reasonable suspicion of further criminal conduct, in which case the length of the stop is still limited in duration and scope, and may not evolve into a fishing expedition.

 The Guzman court expresses some concern over “unfettered police discretion as to whom to stop.” 864 F.2d at 1516. Police discretion in Nevada, however, is limited by the scope of the pertinent legislative enactment.
The Supreme Court and other courts applying the “would” standard have evinced concern over the proper scope of police discretion. See Delaware v. Prouse, 440 U.S. 648 (1978). However, the Prouse court, concerned over random police stops to search for unlicensed drivers and unregistered vehicles, held that, rather than acting upon standardless and unconstrained discretion, law enforcement officers must act upon probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations, or other articulable bases amounting to reasonable suspicion that the driver is unlicensed or his vehicle unregistered. Id. at 661. In essence, the Court endorsed the preliminary use of traffic law violations as a means to discover unlicensed drivers who “are presumably the less safe drivers whose propensities may well exhibit themselves.” Id. at 659. If it may be presumed that unlicensed drivers will exhibit a propensity to violate traffic laws pursuant to which their unlicensed status may be discovered, it is not unreasonable to also presume that users of illegal substances will exhibit a similar propensity. As alluded to by the Court, probable cause concerning violations of traffic laws is a valuable tool in discovering a host of other infractions which may otherwise go unnoticed.

 Indeed, the Guzman court expressed concern over police discretion turning on no more than “the state of the digestion of any officer who stops us or, more likely, upon our obsequiousness, the price of our automobiles, the formality of our dress, the shortness of our. hair or the color of our skin.” Guzman, 864 F.2d at 1516. As discussed below, certain subjective motivations for a stop may certainly be constitutionally suspect, such as the color of one’s skin, but absent some constitutional impropriety addressed by a provision other than the Fourth Amendment, these subjective motivating factors are exactly what the Supreme Court has ruled immaterial.

 I note that the unlawful exercise of police discretion in performing a search for incriminating evidence is, in a purely analytical sense, a violation of one’s constitutional rights irrespective of whether any incriminating evidence is seized. It stands to reason, applying the logic of the “would” standard, that a pretextual stop or arrest should likewise be objectively unlawful independent of outcome. Pursuant to the “would” standard, however, outcome is the determinant that casts a shadow on the validity of the prior stop or arrest.

 Again, this would not be true if those “suspected” of hauling contraband were primarily limited to persons who were representative of a suspect class entitled to equal protection under the Fourteenth Amendment.

 I confess an element of perplexity regarding the constitutionally unnecessary adoption of a standard that advances no constitutional concern and provides benefit only to criminals. The “would” standard fosters more crime in a society where crime is rampant to the extent that the quality of life among innocent citizens is substantially impacted. Perhaps, as with Guzman, the “would” test is a simple reflection of judicial distaste for those officers who may succumb to the temptation of power abuse. Nevertheless, referring to the state of an officer’s digestion, or a driver’s obsequiousness, or the wealth reflected in the driver’s car, seems to me to be an exaggerated and irrelevant excuse for foisting additional crime on society. It must be remembered that the only persons who will invoke the pretext doctrine are those who have been caught in the act of committing a serious criminal offense.