UNITED STATES of America,
Plaintiff–Appellee,

v.

John Edward JACKSON, Jr.,
Defendant–Appellant.

No. 89–2737.

United States Court of Appeals,
Seventh Circuit.

Submitted March 22, 1990.
Decided April 30, 1990.

Andrew B. Baker, Jr., Asst. U.S. Atty., Hammond, Ind., David H. Miller, Fort Wayne, Ind., for plaintiff-appellee.

Christopher C. Myers, Myers & Wagoner, Fort Wayne, Ind., for defendant-appellant.

Before CUDAHY and POSNER, Circuit Judges, and PELL, Senior Circuit Judge.

POSNER, Circuit Judge.

The defendant was convicted of possession of cocaine with intent to distribute it, and he appeals, challenging the admission into evidence of the cocaine found on his person during the search of an apartment not his own. According to the police officers' version of the incident, which the district judge was entitled to believe and did believe, they were in the midst of searching the apartment with the permission of its occupant when John Jackson knocked on the door. One officer opened it and another asked Jackson to take his hands out of his pockets, which he did.

This officer then asked Jackson whether he would mind if he looked in his pockets, and Jackson answered, "No, go ahead." The officer looked in Jackson's pockets and found the cocaine that was later used to convict him. The lawfulness of this use depends on whether his consent to the officer's searching his pockets was voluntary. For purposes of appeal this is a question of fact, which means that we can reverse only if persuaded that the district judge committed clear error. *United States v. Grier*, 866 F.2d 908, 935 (7th Cir.1989).

The issue on appeal has been confused by the emphasis that the briefs place on the "free to leave" cases, a vast body of case law illustrated by *United States v. Dunigan*, 884 F.2d 1010, 1015 (7th Cir. 1989). When a police officer accosts a person in an airport, in a train station, or on the street, and asks him to respond to questions, one consideration in determining whether the decision to respond is "voluntary" in the loose sense in which the law uses this term is whether a reasonable person in his position would think he was free to continue on his way, or instead would think himself confined. The government argues in this case that Jackson was free to leave, and knew it; all he had to do was walk out of the apartment when the officer told him to take his hands out of his pockets or asked him whether he would mind the officer's looking inside the pockets. The argument is unrealistic, so it is no surprise that the district judge, while holding that Jackson's consent to the search was voluntary, did not state that he accepted the government's argument that Jackson had been free to leave the apartment. There were several police officers in the apartment, and the average person who enters an apartment that is being searched by the police and is asked to take his hands out of his pockets will not think himself free to leave. The fact that the police have asked him to take his hands out of his pockets implies that they anticipate some potential menace from him. In these circumstances he would be foolhardy to try to leave. And it is plain that if Jackson had tried to leave, the police would have stopped him. There was a strong likeli-hood that he was connected in some way with the drug activities in the apartment and indeed that he might—as turned out to be the case—be bringing drugs or money to the apartment. The occupant of the apartment had told the police that people would be coming to the apartment that day to deal in drugs, and the police had already arrested one dealer who was in the apartment when they arrived—armed and with drugs on his person.

So we may assume that Jackson was not free to leave, and that he knew it. We have still a finding of fact that he voluntarily consented to the search of his pockets. We cannot say that the finding is clearly erroneous. Even if he knew he could not leave, it does not follow that he believed he had no choice when asked whether he minded the officer's looking in his pockets. Although armed, the officers did not menace him with their guns; indeed they testified (and the district judge was entitled to and did believe) that they kept their guns out of sight. Jackson may have thought that, whether or not he consented to the search, the jig was up; if that is what he thought, it did not make his consent to the search involuntary.

There is a further, and we think decisive, point against Jackson's argument. His appearance on the scene was, in the circumstances, sufficiently suspicious to entitle the officers, under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to ask him what he was doing there and to conduct a pat-down search. For remember that the police had been led to expect armed drug dealers to come to the apartment that day. The probability that Jackson was such a dealer may not have been sufficient to warrant an arrest, but it was sufficient to warrant a stop. The pat-down search incident to the stop would almost certainly have revealed the "rocks" of "crack" cocaine in Jackson's pockets, he would have been arrested, and the cocaine would have been admissible at his trial because seized in the course of a lawful *Terry* stop. So even if, as we do *not* believe, it was somehow wrong for the

officers to ask Jackson whether they could search his pockets, their "misconduct" was not a necessary condition, or but-for cause, of the discovery of the cocaine. That discovery was, in the circumstances, inevitable, and therefore a violation of his rights under the Fourth Amendment would not compel the exclusion from evidence of the fruits of the violation. *United States v. Arango*, 879 F.2d 1501, 1507 n. 2 (7th Cir.1989).

Jackson's other ground for reversal is frivolous. The judgment is

AFFIRMED.