**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Pedro QUINONES–SANDOVAL,
Defendant–Appellant.**

**No. 90–3480.**

United States Court of Appeals,
Seventh Circuit.

Argued May 6, 1991.

Decided Sept. 18, 1991.

Robert Haida, Asst. U.S. Atty., Criminal Div., Randy G. Massey (argued), East St. Louis, Ill., for U.S.

Ilene A. Goodman (argued), Federal Public Defender, St. Louis, Mo., for defendant-appellant.

Before CUMMINGS and EASTERBROOK, Circuit Judges, and WILL, Senior District Judge.*

---

* The Honorable Hubert L. Will of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

WILL, Senior District Judge.

Pedro Quinones–Sandoval was convicted for one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The drugs were found during a search of Quinones' car incident to a traffic stop. He appeals the district court's grant of the Illinois Department of State Police's motion to quash his subpoena for police records contending the documents sought were relevant to show that the stop was pretextual. He also challenges the court's denial of his pretrial motion to suppress the cocaine evidence, claiming both that the stop was a pretext to search for narcotics and that he did not voluntarily consent to the search. We affirm.

## I.

On the morning of March 6, 1990, Pedro Quinones–Sandoval was driving north on I-57 in Fayette County, Illinois in a silver car with Texas license plates. State Police Trooper Thomas Oliverio was driving behind Quinones and observed him run over the left and right hand fog lines of the highway while passing a semi-tractor trailer. He signaled Quinones to stop. Quinones pulled over and stepped out of his car. Trooper Oliverio came over to the car and told Quinones that he had been stopped because he had run off the road twice and asked to see his driver's license. As Quinones handed him a Texas driver's license, Trooper Oliverio saw that Quinones had another form of identification in his wallet which turned out to be a Michigan identification card. A check of the license plates revealed that the car was registered to a woman in Texas who Quinones identified to be his aunt. Quinones produced an affidavit signed by his aunt authorizing him to drive the car and an expired insurance identification card in his own name. Sometime during this conversation Trooper Oliverio noticed that inside the car two strong smelling air fresheners were wedged into an air vent and an empty air freshener box was on the floor between the car door and the passenger seat.

Trooper Oliverio asked Quinones to sit with him in the patrol car while he ran a license check and issued a warning ticket. He prepared a ticket for improper lane usage which he asked Quinones to sign. Quinones signed the ticket and Trooper Oliverio gave him a copy and returned his identification. He asked Quinones whether he had any drugs or guns in his car. Quinones responded, "No, check it out." Trooper Oliverio asked if his response meant that it was alright to search the car and Quinones confirmed that the car could be searched. Trooper Oliverio then asked Quinones whether he understood Spanish better than English and Quinones responded that he did. Trooper Oliverio completed a consent to search form on the side written in Spanish and asked Quinones if he would sign the form. Quinones refused but confirmed that he did not object to the search. Around this time, another Trooper, Jane Middleton from the canine unit, arrived at the scene. Trooper Oliverio asked Trooper Middleton to sit in the patrol car while Quinones repeated his consent. Shortly thereafter, a third officer, Trooper Stockwell arrived, who stayed with Quinones in the patrol car while the search was conducted.

A search dog signaled an alert at both rear sides of the car. Trooper Oliverio examined the interior of the car and noticed that the black paint on the head of a screw holding an air vent near the rear of the driver's side door was chipped off indicating that it had previously been removed. He took off the vent and discovered several packages later confirmed to contain cocaine. Quinones was placed under arrest.

## II.

Before trial, Quinones subpoenaed documents from the custodian of records of the Illinois Department of State Police. He requested all records related to Trooper Oliverio's stops, warnings, tickets, searches and arrests beginning in 1988, including the race of all individuals who were stopped, the number of vehicles searched, the fruits of these searches and the number of individuals who consented to the searches. The Department responded to the subpoena by filing a motion to quash

contending that Quinones' request was not only unreasonable and oppressive but that the documents sought were also irrelevant to the constitutionality of the stop. The district court agreed and quashed the subpoena.

A traffic stop cannot be used as a pretext to search for narcotics. *United States v. Lefkowitz*, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932); *United States v. Lewis*, 910 F.2d 1367, 1371 (7th Cir.1990). Quinones asserts that the subpoenaed information directly pertained to whether Trooper Oliverio had a habit and routine practice of using minor traffic violations as a pretext to stop motorists based on their race. This circuit, however, employs an objective test to determine whether a stop is purely a pretext to conduct a search where probable cause to search is lacking. *United States v. Trigg*, 878 F.2d 1037, 1041 (7th Cir.1989). The analysis under this approach is limited to examining whether there was probable cause to make the particular stop and whether the stopping officer was acting with authority. *Id.* "[S]o long as the police are doing no more than they are legally permitted and objectively authorized to do, an arrest is constitutional." *Id.*

Quinones subpoenaed the police department records in an effort to demonstrate that Trooper Oliverio had preconceptions about the profile of drug traffickers and that this was the underlying reason for the stop. The only pertinent inquiry, however, was whether Quinones had committed a traffic violation for which Oliverio was authorized to issue a warning. Given that Trooper Oliverio's past pattern of stops and searches was not relevant to whether he had a permissible basis to stop Quinones, the district court acted within its discretion in quashing the subpoena.

*   *   *

Quinones next argues that the district court erred in denying his motion to suppress the cocaine evidence because the stop was pretextual. He contends that it was implausible that he would have been stopped simply for a sloppy pass and that he was pulled over because Trooper Oliver-io observed that he was Hispanic and driving a car with out-of-state plates. After holding an evidentiary hearing, the district court disagreed, and we will not reverse its findings unless they were clearly erroneous. *United States v. D'Antoni*, 856 F.2d 975, 978 (7th Cir.1988).

The district court credited Trooper Oliverio's testimony that he did not stop motorists based on a particular profile and concluded that Trooper Oliverio pulled Quinones over because he observed him driving erratically. There is no doubt (and Quinones does not argue to the contrary) that an Illinois patrol officer is authorized to stop a driver for improper lane usage and to issue a warning ticket. *Cf. United States v. Fiala*, 929 F.2d 285, 288 (7th Cir.1991) (holding Illinois trooper's stop for improper lane usage was not pretextual). Under *Trigg* that was as far as the district court had to go in examining the constitutionality of the stop. Absent evidence that Trooper Oliverio had no permissible basis to detain Quinones, the district court properly found that the stop was not merely a pretext to conduct a search.

*   *   *

Quinones contends further that even if the stop itself was not pretextual, he did not voluntarily consent to the search. Consent lifts the warrant requirement of the fourth amendment but only if the consent to search is voluntary. *See Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968). The test for "voluntariness" is a factual one requiring an examination of all the circumstances in which consent was given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973).

The district court examined the total circumstances of the stop and did not find that the atmosphere surrounding Quinones's consent was coercive. This conclusion was not clearly erroneous. Trooper Oliverio was the only police officer present when Quinones first stated that the car could be searched. He never displayed or brandished a weapon, physically restrained

Quinones, or threatened him with arrest. He was also returning Quinones' identification when he asked if he was carrying drugs. Most telling, of course, .is that Trooper Oliverio apparently never even requested that he be permitted to search the car—Quinones invited the search by his own statement: "No, check it out."

■ Quinones points to the fact that he was told to sit in the patrol car prior to authorizing the search. He asserts that the effect of this was to place him in custody, in other words, that he was subject to restraint comparable to a formal arrest. That an individual is in custody, although not precluding a finding that consent was freely given, does raise a doubt. *See United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). While sitting in the patrol car it was unlikely that Quinones believed he was free to go—nor was he ever told he could leave prior to volunteering that the car could be searched. *Cf. United States v. Rivera*, 906 F.2d 319 (7th Cir.1990) (defendant's consent to search voluntary when sitting in patrol car and was told the investigation was over).

That feeling of constraint, however, does not inevitably lead to the conclusion he could not voluntarily consent to a search. *Cf. United States v. Jackson*, 901 F.2d 83, 84 (7th Cir.1990) (during police search fact that the defendant could not leave did not mean that he had no choice when asked if officers' could search his pockets). Moreover, the sole fact that Quinones was seated in the patrol car does not by itself distinguish his circumstances from that of any other motorist who has been pulled over for a minor traffic violation. *Cf. Berkemer v. McCarthy*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) (holding that individuals detained for routine traffic stops "are not 'in custody' for the purposes of *Miranda*"). Trooper Oliverio's request that Quinones sit in the patrol car, without any finding by the district court suggesting an otherwise coercive atmosphere, did not negate the validity of Quinones' consent, nor did it turn a routine traffic stop into a custodial arrest.

### III.

The district court did not err in denying Quinones' motion to suppress, nor did it abuse its discretion in granting the Illinois Police Department's motion to quash. Accordingly, the district court is

AFFIRMED.