36 F.3d 1099
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph PAOLOCA, Defendant-Appellant.
 No. 94-1604.
 United States Court of Appeals, Seventh Circuit.
 Argued June 6, 1994.
Decided Sept. 30, 1994.
Rehearing and Suggestion for Rehearing En Banc Denied Nov. 3, 1994.
 
 Before ALARCON,* COFFEY and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 The defendant Joseph Paoloca appeals the district court's denial of his motion to suppress 87 kilograms of marijuana seized on September 21, 1993. The defendant entered a plea of guilty, but reserved the right to appeal the trial court's decision denying his motion to suppress. Paoloca argues that the officer lacked probable cause to stop his car and in the alternative, that he limited his consent to search to the passenger compartment of the car. We affirm.
 
 I. BACKGROUND
 
 2
 On September 22, 1993, a federal grand jury returned an indictment against Joseph Paoloca charging him with possession with intent to distribute a controlled substance in violation of 21 U.S.C. Sec. 841(a)(1). After arraignment, the defendant filed a motion to suppress the 87 kilos of marijuana seized from his vehicle during a traffic stop.
 
 
 3
 At the suppression hearing on November 12, 1993, the government presented the testimony of Illinois State Patrol Trooper Robert Eisenbarger concerning the search of the vehicle and the speeding charge leading up to the search. The trooper testified that he was on routine patrol traveling west bound on Interstate 55 in Madison County, Illinois, and observed the defendant driving east bound at a speed believed to be excessive. The trooper initially noticed Paoloca's car as it was emerging from a construction zone which the trooper erroneously believed had been posted with a designated maximum speed limit of 45 miles per hour. The officer also noted that the defendant's car had no front license plate and darkly tinted windows, in violation of Illinois law. The trooper stated that he activated his radar and measured the defendant's speed at 58 miles per hour, made a U-turn and followed Paoloca's car. Officer Eisenbarger turned on his siren and warning lights and pulled the defendant over. At that time, the officer realized that Paoloca's vehicle had an Arizona license plate, and that since tinted windows and one rear license plate were legal in the State of Arizona, these two violations were not a valid basis for issuing a citation. Further, the trooper noted that since the construction zone speed signs were not posted the speed limit was 55 miles per hour.
 
 
 4
 At this time Eisenbarger approached the defendant's car and requested Paoloca's driver's license, motor vehicle registration, and proof of his auto insurance.[1] The defendant responding gave the trooper a driver's license listed to a John Arabia, and failed to produce either his registration or his proof of insurance as requested. After testifying to the above related facts regarding the motor vehicle stop the officer informed the trial court that the defendant was fumbling with his papers, had difficulty speaking because his mouth was extremely dry and his lips were sticking together. Eisenbarger also stated that in the course of searching for his registration papers, the defendant explained that he had just purchased the car a few days earlier, and that he lost the key for the trunk. The trooper described Paoloca as becoming increasingly nervous as he continued to converse with the defendant. Eisenbarger stated the combination of these facts made him suspicious of Paoloca:
 
 
 5
 "He was nervous in the fact that--there is a difference to me between a police nervousness and someone who is nervous of something else, like they are trying to hide something.... He was more than just police nervous. You could tell by visual, by body language, dropping the paperwork, couldn't find the paperwork, looking away, things like that."
 
 
 6
 The trooper returned to his patrol car, and decided to give Paoloca a warning ticket. After issuing the defendant a warning citation, and requesting that he sign it, Eisenbarger told Paoloca he was free to go, but asked him if he would answer a few questions. Paoloca agreed, and the trooper inquired of him as to whether he had any drugs or weapons in his possession. Paoloca denied having either. The trooper observed that Paoloca looked away when he asked about drugs, which made Eisenbarger suspicious of Paoloca. Shortly thereafter, Eisenbarger stated his suspicions increased and he asked the defendant for consent to search his vehicle. Paoloca responded "Sure, go ahead and look." The trooper testified that he presented the defendant with the standard written "Illinois Police Consent to Search Form," asked him to read it and to sign it.[2] Paoloca signed the consent form and added that, "[i]t will be difficult to search the trunk, because I lost the key." The officer noted in his police report, referring to Paoloca, that after he signed the form he "then became very excited and said that I would be unable to search the trunk because he had lost the key."[3]
 
 
 7
 The trooper began his search of the car, and in the process detected an aroma of marijuana. At this time the officer folded down the rear seat of the car and discovered the stash of marijuana totaling some 87 kilograms (191.4 lbs.) in the trunk. He placed Paoloca under arrest for possession of a controlled substance, and took him into custody.
 
 
 8
 After considering all of the evidence, the trial court denied the defendant's motion to suppress, and ruled that the trooper had probable cause to stop the vehicle, "[s]peeding, albeit three miles over the speed limit, is a legitimate, non-pretextual reason for an officer to stop an individual." The trial court went on to uphold the search explaining,
 
 
 9
 "Clearly, the defendant gave his consent to search. The scope of the written consent included the trunk of the vehicle.... The fact that the defendant said it would be difficult to search the trunk does not amount to a limitation on the clear consent he gave to search.... [A]nd it was reasonable for the officer to include the trunk compartment as a part of the consented search."
 
 
 10
 The case was set for trial on February 2, 1994, and the defendant entered a plea of guilty and based upon the testimony received was found guilty on that date. Pursuant to Fed.Rule Crim.P. 11(a)(2), the defendant reserved his right to appeal the adverse determination of his motion to suppress. Sentencing was set for March 11, 1994, and the defendant was ordered confined for a period of 37 months, to be followed by 3 years of supervised release and a $50 special assessment. The defendant filed a notice of appeal of the denial of the motion to suppress under 28 U.S.C. Sec. 1291.
 
 II. ISSUES
 
 11
 Defendant raises two issues on appeal arguing that the trial court erred in not suppressing the 87 kilograms of marijuana discovered in the trunk of his car: (1) that the court erred in determining that the arresting officer had probable cause to stop the defendant's vehicle; and (2) that the court erred in not agreeing with his limiting the search of his vehicle to the passenger compartment when he stated it would be "difficult" to search the trunk of his car.
 
 III. DISCUSSION
 A. Standard of Review
 
 12
 In reviewing a district court's ruling on a pre-trial motion to suppress, the standard of review is whether the district court's ruling is clearly erroneous. United States v. Tilman, 19 F.2d 1221, 113 (7th Cir.1994); United States v. Quinones-Sandoval, 943 F.2d 771, 772 (7th Cir.1991).
 
 B. Probable Cause
 
 13
 Initially, the defendant argues that Officer Eisenbarger improperly stopped him because the officer was without probable cause to believe he was committing a violation of the state traffic laws and maintains that he was the victim of a pretextual stop, and therefore the marijuana seized should have been suppressed. United States v. Lewis, 910 F.2d 1371 (7th Cir.1990). Paoloca contends that other officers would not have made such a stop in a factual scenario of this nature, because they recognize: "that the possibility of human error (on their part) and the electronic malfunctioning [sic] is too great to justify a stop for such purported marginal speed violations (3 miles per hour over the limit)." The defendant presented no evidence to support his claim that the officer was unable to determine whether his car was speeding. The facts illustrate that Eisenbarger believed the defendant was speeding and activated his radar. The radar confirmed the officer's belief. Further, courts have recognized that police officers are instructed in their law enforcement training to determine the speed of a motor vehicle. See e.g. Deaver v. Hickox, 224 N.E.2d 468 (Ill.App.1967). Moreover, judging the speed of a car is neither a skill nor a particular talent that requires extensive experience, as courts also rely on lay persons for their opinion as to the speed of vehicles at a specific time. See Iverson v. Iverson, 370 N.E.2d 1135, 1142 (Ill.App.1977).
 
 
 14
 The defendant misconstrues the facts and the law of this case. The Seventh Circuit uses an objective standard to determine whether a police officer's stop is based on probable cause, or is merely a pretext for searching a vehicle. Quinones-Sandoval, 943 F.2d at 774.; United States v. Trigg, 878 F.2d 1037, 1041 (7th Cir.1989), cert. denied 112 S.Ct. 428 (1991). The only relevant inquiry is "whether there was probable cause to make the particular stop and whether the stopping officer was acting with authority." Quinones-Sandoval, 943 F.2d at 774; Trigg, 878 F.2d at 1041.
 
 
 15
 Under the undisputed facts, the defendant was travelling in excess of the speed limit, his car was missing a front license plate and had tinted windows, therefore the Quinones-Sandoval test is satisfied in this case. The arresting officer observed that the car was traveling at a speed that he believed was in excess of the speed limit. Whether the defendant was traveling three, five, ten or fifty miles over the speed limit, any speed over 55 miles per hour is a violation of the law. After gauging the speed of the defendant's car on radar, the officer confirmed that the defendant was in fact traveling in excess of the speed limit. Furthermore, the lack of a front license plate and tinted windows traveling on the highways in the State of Illinois gave the trooper probable cause to believe the defendant was violating the laws of the State of Illinois. We agree with the trial court's finding that "Trooper Eisenbarger had probable cause to stop the defendant's vehicle." See Quinones-Sandoval at 974.
 
 C. Consent to Search
 
 16
 In addition to the defendant's challenge to stop, the defendant also argues that his statement that it would be difficult to search the trunk, in effect placed limits on the consent to search form he signed. The defendant characterizes his statement that it would be "difficult" to search the trunk as a clear limit to search only the passenger compartment of his car.
 
 
 17
 Before searching the defendant's car, Officer Eisenbarger not only received oral consent from Paoloca, but also obtained the defendant's written consent to search the vehicle. "A consensual search is manifestly reasonable so long as it remains within the scope of the consent." United States v. Torres, 93-2854, Slip op. at 9 (7th Cir.1994) ( quoting United States v. Martinez, 949 F.2d 1117, 1119 (11th Cir.1992) (citations omitted)). In the absence of the search being specifically limited, the police officers are constrained by the bounds of reasonableness. United States v. Harris, 928 F.2d 1113 (11th Cir.1991); Florida v. Jimeno, 111 S.Ct. 1801, 1803 (1991). Under the Fourth Amendment, the standard for measuring the scope of a suspect's consent is that of objective reasonableness "what would the typical reasonable person have understood by the exchange between the officer and the suspect." Jimeno, 111 S.Ct. at 1803-4. "Factors the court must consider include, but are not limited to, the defendant's behavior during the search, the purpose of requesting consent to search, the location of the search ..." U.S. v. Osuorji, 93-3182, Slip op. at 7 n. 3 (7th Cir.1994) citing McGann v. Northeast Ill. Reg. Commuter R.R. Corp., 8 F.3d 1174, 1179 (7th Cir.1993).
 
 
 18
 In the instant case, the defendant not only gave oral permission to search his car but also signed a written consent form specifically authorizing a search of the entire vehicle "including any part compartment, or trunk of the vehicle and the contents of any object or container found therein." The patrolman heard the defendant say that searching the trunk would be "difficult" because he "lost the key." We do not agree that this statement could reasonably be interpreted to mean that the officer's authority to search the vehicle in view of the defendant's oral consent and signature on the consent form, limited the search in any manner, shape or form. This was a mere statement of fact; "It will be difficult to search the trunk because I have lost the key." The defendant having failed to limit the search to areas of the car excluding the trunk, necessarily means that the officer who folded down the rear seat and discovered the marijuana was well within the bounds of the consent, and reasonableness. Furthermore, the defendant never voiced an objection to the officer at the scene or while in police custody objected to the search. In our opinion, the officer had no reason to believe much less even suspect that Paoloca intended to limit the scope of the search or wanted it to be discontinued. See Harris, 928 F.2d at 1117-18.
 
 
 19
 Paoloca contends that his case is indistinguishable from the border stop in United States v. Patacchia, 602 F.2d 218 (9th Cir.1979). In Patacchia, the defendant consented to a search of his vehicle, but stated that because of the body damage to the vehicle that interfered with the opening of the trunk and his loss of the key, the border patrol would not be able to search his trunk. Id. at 219. The border patrol then pried (forced) open the trunk with a metal bar and detected the odor of marijuana, and at this time placed the defendant under arrest. The Ninth Circuit determined that the defendant's statement in that case, referring to his ability to open his damaged trunk, "I would but I can't" did not amount to consent to search the trunk. Id. at 219. Further the court ruled that the border patrol did not have probable cause to conduct a search of the defendant's car in the first place. Id. at 220.
 
 
 20
 The facts are distinguishable, and therefore Patacchia is inapplicable to the instant case. First, the border patrol is authorized to make stops for brief questioning and are not required to have probable cause to believe the detainee has violated the law. Whereas in the case at bar, Trooper Eisenbarger had probable cause to believe the defendant had committed three separate traffic offenses prior to his stop of the vehicle. Second, the facts concerning the search and the defendant's statements are not similar to those presented to the court in Patacchia. In Patacchia the defendant informed the border patrol that they could not search his trunk because of body damage and his loss of the key. That statement "I would but I can't" may not be reasonably interpreted as giving the officers permission to search his trunk. In the instant case, the defendant stated only that it would be "difficult" to search the trunk, "because [the defendant] lost the key." Paoloca gave both verbal and written consent to search his vehicle, while the defendant in Patacchia gave only a limited oral consent. Moreover, the officer in the case before us did not use pry-tools to make entry into the trunk, he merely folded down the rear seat. In effect, he was able to gain access to the trunk without a key and without causing damage to the vehicle.
 
 
 21
 Regardless of those distinctions, the language of the written consent form that Paoloca signed gave the officer permission "to search ... [the defendant's car], including any part, compartment, or trunk of the vehicle and the contents of any object or container found therein." As this court has ruled before "this language could not be any clearer." Torres, slip op. at 10.
 
 
 22
 Even if the defendant had not consented to the search of his trunk, the officer had probable cause to search based on the totality of the evidence within his knowledge. The Supreme Court has stated, "an individual's expectation of privacy in a vehicle and contents may not survive if probable cause is given to believe that the vehicle is transporting contraband." Ross, 102 S.Ct. at 2172. The Court ruled that if probable cause of contraband transportation exists then all reasonable parts of the vehicle may be searched. Id. When determining whether or not there was probable cause the court must look at the totality of the circumstances to see if a warrantless search was reasonable. Illinois v. Gates, 103 S.Ct. 2317, 2328 (1983). In the instant case, the totality of the circumstances support the trooper's search of the vehicle. Among the facts previously enumerated the defendant was extremely nervous during the traffic stop, and was well aware of the fact that he had presented the officer with false identification, and knew the officer would discover his subterfuge. The defendant looked away when the officer asked him if he had any drugs in the car, the defendant due to his anxiety had trouble speaking, fumbled with the papers he was holding, could not or refused to give the officer the information he requested including the registration of a car he had bought just a few days before, and claimed that he lost the key to his trunk. The claim that a person would travel cross-country in a recently purchased vehicle, without any proof of ownership, vehicle registration, or insurance, and without a key to the trunk in that short span of time, is inherently suspect. Coupled with the odor of marijuana the trooper detected in the car, all these facts considered in their totality create probable cause that the defendant was transporting drugs. Therefore, the trial court's decision not to suppress the evidence against Paoloca was not clearly erroneous.
 
 IV. CONCLUSION
 
 23
 We are of the opinion that the officer had probable cause to stop the vehicle. Further, the defendant's statement concerning the lost key did not limit the consent of the search of the vehicle. And even if so, the defendant's own suspicious actions and the evidence in the car gave the officer probable cause to search the vehicle.
 
 
 24
 We agree with the trial court's decision to deny the defendant's motion to suppress. The defendant's appeal is denied and the trial court's decision to receive the marijuana in evidence is
 
 
 25
 AFFIRMED.
 
 
 
 *
 The Honorable Arthur L. Alarcon, of the United States Court of Appeals for the Ninth Circuit, is sitting by designation
 
 
 [1]
 Automobile Insurance is mandatory in the State of Illinois on all registered motor vehicles
 
 
 [2]
 The consent to search form stated, in relevant part:
 "I, ______, hereby grant my consent to the officers of the Illinois Police and other law enforcement officers assisting them to search the following: "Vehicle, described as: white color; 1985 year; Chrysler make; 4-door body style; 6XP 933 license number; including any part, compartment, or trunk of the vehicle and the contents of any object or container found therein. I understand that I have the right to refuse to consent to the search described above and refuse to sign this form."
 The defendant signed the form in the name of John Arabia, and the form was witnessed by Trooper Robert Eisenbarger, Badge Number 4375.
 
 
 [3]
 There is dispute over whether the defendant said the officer would "be unable" or whether it would "be difficult" for the officer to search the trunk. On cross-examination defense counsel inquired into the patrolman's recollection of the defendant's statement
 Q. "Do you remember him saying that to you?
 A. I remember writing that. Where that was, I don't believe that is in a quotation, but I believe he was saying something in those lines.
 Q. So it is possible that he might have. In fact, it's probable that he might have said that you would be unable to go through the trunk as opposed to the fact that it would be difficult for you to go through the trunk, is that correct?
 A. Due to the fact that there was no key to the trunk I would be unable to lock [sic] it and look into the trunk."
 This dispute is irrelevant to our decision.