51 F.3d 276
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert L. BUTKIEWICZ, Defendant-Appellant.
 No. 94-2148.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 28, 1995.
Decided March 27, 1995.
 
 Before BAUER, COFFEY and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Robert L. Butkiewicz pleaded guilty to possessing marijuana with intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1), and was sentenced to 60 months' imprisonment, to be followed by four years on supervised release. Mr. Butkiewicz's plea reserved the right to appeal the district court's denial of his motion to suppress 370 pounds of marijuana seized from his Ryder rental truck. On appeal, Mr. Butkiewicz claims that (1) the Indiana state troopers lacked reasonable suspicion to stop his vehicle on the highway, and (2) he did not voluntarily consent to the troopers' search of the rental truck. Because both the stop and subsequent search of Mr. Butkiewicz's truck were valid under the Fourth Amendment, we affirm the decision of the district court.
 
 I. FACTS
 
 2
 On November 10, 1993, a federal grand jury returned a one-count indictment charging Mr. Butkiewicz with possession with intent to distribute in excess of 100 kilograms of marijuana in violation of 21 U.S.C. Sec. 841(a)(1). On November 24, 1993, Mr. Butkiewicz filed a motion to suppress the marijuana evidence. On December 10, 1993, the district court conducted an evidentiary hearing on the motion. At the hearing, Indiana state trooper Terry Della Rosa testified that on October 26, 1993, a trooper assigned to the criminal interdiction task force of the Indiana state police informed him that the Ryder rental truck driven by Mr. Butkiewicz was a "suspicious vehicle."[1] Trooper Della Rosa, who was driving a marked Indiana state police car, followed Mr. Butkiewicz in his truck for approximately one mile southeast on Interstate 74 in Shelby County, Indiana. At about 10:55 a.m., Trooper Della Rosa observed Mr. Butkiewicz's vehicle weave in its lane of traffic and travel outside its lane onto the berm of the highway on two occasions. Trooper Della Rosa turned on his warning lights and signalled for Mr. Butkiewicz to pull over. Trooper Dean Wildauer was traveling behind Trooper Della Rosa in a separate marked police car and stopped to assist him.[2]
 
 
 3
 Trooper Della Rosa approached the truck from the passenger side and knocked on the window while Trooper Wildauer approached the driver's side. When Mr. Butkiewicz opened the door of the cab, Trooper Della Rosa advised him that he was being stopped because the truck had been weaving. Mr. Butkiewicz told the officers that he was transporting furniture from Texas and passing through town on the way to his final destination. Trooper Della Rosa issued Mr. Butkiewicz a warning citation for unsafe lane movement and told him he was free to leave the scene. As Mr. Butkiewicz was walking back to the cab of his truck, Trooper Della Rosa asked if he would mind answering some questions. Mr. Butkiewicz replied that he did not. Trooper Della Rosa asked Mr. Butkiewicz whether he was transporting drugs, guns, or large sums of money. Mr. Butkiewicz appeared nervous and said that "he didn't have any of those things." Trooper Della Rosa asked Mr. Butkiewicz for permission to search the truck and indicated that the search was for firearms and narcotics. Trooper Della Rosa also advised Mr. Butkiewicz that he did not have to consent to the search of the truck. Mr. Butkiewicz replied that "it was okay [to search the truck], but there is nothing there," and opened the combination lock on the rear door of the truck.[3]
 
 
 4
 The truck was filled with new furniture haphazardly loaded inside.[4] Trooper Wildauer climbed inside the cargo area of the truck to search for contraband while Trooper Della Rosa stood with Mr. Butkiewicz outside by the rear of the truck. Trooper Della Rosa and Mr. Butkiewicz were able to observe the entire progress of Trooper Wildauer's search. At no time during the course of the search did Mr. Butkiewicz complain about Trooper Wildauer's actions or ask that the search be stopped or limited. Although both troopers were wearing civilian clothes, they had identified themselves to Mr. Butkiewicz as police officers. Three to five minutes into the search, Trooper Wildauer found nearly 370 pounds of marijuana in the cargo portion of the truck.[5] Mr. Butkiewicz was then placed under arrest.
 
 
 5
 Opposed to Trooper Della Rosa's testimony was the testimony of Mr. Butkiewicz. Mr. Butkiewicz testified that in response to the trooper's request to search the truck, he said, "The only thing I have got, sir, is this furniture," or "Sir, the only thing I have got in there is furniture." Mr. Butkiewicz also testified that the troopers failed to advise him of his right not to consent to the search. Mr. Butkiewicz further testified that he did not feel free to leave the scene because the troopers were questioning him.
 
 
 6
 Following the hearing, the district court denied the motion to suppress the marijuana evidence, concluding that Mr. Butkiewicz's truck was lawfully stopped, and that he voluntarily consented to the search.[6] On May 6, 1994, Mr. Butkiewicz entered into a conditional guilty plea agreement with the government pursuant to Fed.R.Crim.P. 11(a)(2). Under the terms of the plea agreement, Mr. Butkiewicz pleaded guilty to Count One of the indictment, but reserved his right to appeal the district court's denial of his motion to suppress. The district court sentenced Mr. Butkiewicz to a 60-month term of imprisonment, followed by a four-year term of supervised release, and ordered a special assessment of fifty dollars. This appeal from the denial of the motion to suppress followed.[7]
 
 II. DISCUSSION
 
 7
 The validity of Trooper Della Rosa's traffic stop and search of Mr. Butkiewicz's truck are the sole issues in this appeal.[8] We review the district court's denial of Mr. Butkiewicz's motion to suppress for clear error. United States v. Mounts, 35 F.3d 1208, 1212 (7th Cir.1994). Clear error exists only if, after reviewing the evidence, we are left "with the definite conviction that a mistake has been made." Id. (quoting United States v. Tipton, 3 F.3d 1119, 1121 (7th Cir.1993)). "In conducting our review, we give particular deference to the district court which had the opportunity to hear the testimony and observe the demeanor of the witnesses." Id.; see also, e.g., United States v. Cardona-Rivera, 904 F.2d 1149, 1153 (7th Cir.1990) ("The task of determining whose testimony is more truthful is a difficult one in [drug] cases, and it is performed by the trier of fact with little effective power of intervention by the appellate court.").
 
 A. Reasonable Suspicion to Stop the Vehicle
 
 8
 Mr. Butkiewicz first contends that the traffic stop was merely a pretext to search for drugs, and that the state troopers did not have reasonable suspicion to make the stop. This court uses an objective, two-prong test to determine whether a law enforcement officer's stop is based on reasonable suspicion, or is nothing more than a pretext for searching a vehicle. United States v. Quinones-Sandoval, 943 F.2d 771, 774 (7th Cir.1991); United States v. Trigg, 878 F.2d 1037, 1041 (7th Cir.1989), cert. denied, 502 U.S. 962 (1991). The first prong is whether the police officer had reasonable suspicion to make the particular stop, and the second prong is whether state or municipal law afforded a basis for the stop. Quinones-Sandoval, 943 F.2d at 774; United States v. Fiala, 929 F.2d 285, 287 (7th Cir.1991); Trigg, 878 F.2d at 1041. If both prongs of the test are met, then the stop satisfies the Fourth Amendment's reasonableness requirement. Trigg, 878 F.2d at 1041. "[S]o long as the police are doing no more than they are legally permitted and objectively authorized to do, an arrest [or stop] is constitutional." Id.
 
 
 9
 After reviewing the transcript of the suppression hearing and giving appropriate deference to the district court's credibility determinations, we are of the opinion that both prongs of the objective test were met in this case. The district court credited Trooper Della Rosa's testimony that he pulled Mr. Butkiewicz over because the truck was weaving within its lane and had twice crossed onto the berm of the road. Such conduct constitutes a violation of the Indiana Motor Vehicle Code.[9] Moreover, cases in this circuit have held that improper lane usage is a legitimate reason for an investigatory stop. See Quinones-Sandoval, 943 F.2d at 774 (stop of car for twice running over the left and right fog lines of the highway); Fiala, 929 F.2d at 287-88 (stop of car for weaving over the fog line of the highway for 5-10 seconds). Therefore, the district court's conclusion that Trooper Della Rosa had cause to stop Mr. Butkiewicz for committing a traffic violation was proper.
 
 B. Voluntariness of Consent
 
 10
 Butkiewicz's next contention is that even if the stop was proper, his consent to the search of his rental truck was not voluntarily given. "Consent lifts the warrant requirement of the fourth amendment but only if the consent to search is voluntary." Quinones-Sandoval, 943 F.2d at 774. "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). In resolving this question, we consider a variety of factors, such as the "age, education, intelligence of the defendant; advisement of his rights; how long he was detained prior to the consent; repeated requests for consent; physical coercion; or whether he was in custody." United States v. Kozinski, 16 F.3d 795, 810 (7th Cir.1994). The district court's finding of voluntary consent is a factual one which must stand unless it is clearly erroneous. United States v. Durades, 929 F.2d 1160, 1163 (7th Cir.1991); United States v. Rivera, 906 F.2d 319, 323 (7th Cir.1990).
 
 
 11
 The total circumstances surrounding the stop of the truck support the conclusion that Mr. Butkiewicz's consent to search was freely and voluntarily given. First, Mr. Butkiewicz had the mental capacity to form consent. The record reveals that Mr. Butkiewicz, who was twenty-four years of age and had a high school diploma from Mexico, conversed with the troopers in English and fully understood what was happening during the stop. See United States v. Garcia, 897 F.2d 1413, 1419 (7th Cir.1990) (district court's finding of voluntary consent was not clearly erroneous despite the defendant's claim that he understood and spoke little English where defendant conversed with troopers in English for considerable periods of time and even translated their questions to his co-defendant). Second, Trooper Della Rosa specifically advised Mr. Butkiewicz of his right not to consent. See United States v. Valencia, 913 F.2d 378, 381 (7th Cir.1990) (the fact that the defendant is informed of his right to refuse consent is highly relevant in determining whether his consent is voluntary). Third, there was no evidence that Mr. Butkiewicz was threatened. No weapons were displayed during the stop, and no harsh words were spoken. Although Mr. Butkiewicz testified that he did not feel free to leave the scene, "[t]hat feeling of constraint ... does not inevitably lead to the conclusion that he could not voluntarily consent to a search." Quinones-Sandoval, 943 F.2d at 775. Trooper Della Rosa's request that Mr. Butkiewicz answer some questions, without any finding by the district court suggesting an otherwise coercive atmosphere, did not negate the validity of his consent. Id. Last, and perhaps most significant, Mr. Butkiewicz told Trooper Della Rosa that it was "okay" to search the truck, and he even opened the lock on the truck's rear door to allow the troopers to enter. See United States v. Bertucci, 532 F.2d 1144, 1146 (7th Cir.) (voluntary consent to search was established by evidence that the defendant opened the rear door of his vehicle in response to a police request to examine cartons contained inside), cert. denied, 429 U.S. 895 (1976). Although Mr. Butkiewicz denied this version of events at the suppression hearing, the district court found that Trooper Della Rosa was the more credible witness, and we defer to that finding. In light of Trooper Della Rosa's testimony, it is clear that Mr. Butkiewicz gave his consent to the search of the truck. The district court's finding that Mr. Butkiewicz's consent was voluntarily given was not clearly erroneous.
 
 III. CONCLUSION
 
 12
 Mr. Butkiewicz's improper lane usage provided the troopers with reasonable suspicion to stop the truck for violation of Indiana Motor Vehicle Code. Once Mr. Butkiewicz was lawfully stopped, he freely consented to a search of the truck's cargo area. Accordingly, the district court did not err in denying the motion to suppress the marijuana seized from the truck. The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The circumstances surrounding the investigation of Mr. Butkiewicz were described at his November 1, 1993, detention hearing conducted by a magistrate judge. At this hearing, Indiana state trooper Dean Wildauer testified that, at 1:00 a.m. on October 26, 1993, he received a telephone call from his brother, an Indianapolis police officer who was working part-time as a security officer at the Holiday Inn near 21st and North Shadeland Avenue in Indianapolis. Wildauer's brother reported suspicious activity at the Holiday Inn and requested his assistance. Wildauer drove to the Holiday Inn where he learned that three individuals had been stopped in a blue 1984 Ford as they were leaving the Holiday Inn after receiving a visit from a fourth person. The individuals told Wildauer that they had just flown in from Texas. At least one of them spoke mainly in Spanish. They gave conflicting stories about what they were doing in the Indianapolis area, and carried false registration to their vehicle. Trooper Wildauer, accompanied by three other police officers, visited the hotel room of two of the individuals and, with their consent, searched the room. During the search, the officers found a handwritten note containing the phone number of the Holiday Inn Express, located at South Keystone Avenue and I-465 in Indianapolis, and the room number 125. The note was suspicious because the individuals stated that they did not know anyone in Indianapolis nor did they have any friends staying in another hotel in the area. The officers drove to the Holiday Inn Express where they learned that Mr. Butkiewicz was registered in room 125. The officers set up a surveillance of Mr. Butkiewicz, which culminated in the stop and search of his Ryder rental truck
 
 
 [2]
 Trooper Wildauer was recovering from surgery and did not testify at the suppression hearing
 
 
 [3]
 Trooper Wildauer testified at the detention hearing that Mr. Butkiewicz volunteered that the two troopers search the truck, stating, "You can check [the truck] if you want."
 
 
 [4]
 Trooper Wildauer testified at the detention hearing that a "junk load" is often used as a decoy to deter searches and to conceal contraband
 
 
 [5]
 Trooper Wildauer testified at the detention hearing that four bundles of marijuana were found at the front end of the cargo area, while additional bundles were found inside a refrigerator and a clothes dryer which were loaded along with the furniture in the truck
 
 
 [6]
 In reviewing that motion, the district court considered the evidence adduced at both the detention hearing and the suppression hearing
 
 
 [7]
 Butkiewicz's notice of appeal of May 11, 1994, was timely, even though it was filed two days before the judgment was entered on the docket sheet, because Rule 4(b) of the Federal Rules of Appellate Procedure treats the notice as being filed on the date of entry of the judgment. Fed.R.App.P. 4(b) ("A notice of appeal filed after the announcement of a decision, sentence, or order--but before entry of the judgment or order--is treated as filed on the date of and after the entry."); United States v. Clay, 37 F.3d 338, 339 (7th Cir.1994)
 
 
 [8]
 During the hearing on the motion to suppress the marijuana evidence, Mr. Butkiewicz challenged only the voluntariness of his consent to search the truck. However, in his post-hearing brief, Mr. Butkiewicz also challenged the validity of the initial stop of the truck. In its entry denying the motion to suppress, the district court disposed of both issues
 
 
 [9]
 Section 9-21-8-24, which the government cites, provides, in part, that "[a] person may not ... change from one (1) traffic lane to another; unless the movement can be made with reasonable safety. Before making a movement described in this section, a person shall ... give an appropriate stop or turn signal ... if any other vehicle may be affected by the movement." See Small v. State, 632 N.E.2d 779, 782 (Ind.App.1994) (police officer's testimony that the defendant's car made a rapid and jerky turn to the side of the road, without activating a turn signal, while only one to one and one-half car lengths ahead of the police officer's car, constituted a violation of section 9-21-8-24 and justified the stop of the defendant's car)
 Section 9-21-8-11 of the Indiana Motor Vehicle Code, which Mr. Butkiewicz cites in addition to section 9-21-8-24, provides, in part, that "whenever a roadway has been divided into three (3) or more clearly lanes for traffic, ... [a] vehicle shall be driven as nearly as practicable entirely within a single lane and may not be moved from the lane until the person who drives the vehicle has first ascertained that the movement can be made with safety." Interstate 74 is a four-lane roadway. Mr. Butkiewicz's mildly erratic driving could be deemed a violation of either statute, or both.